NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 21, 2020[*]
Decided January 23, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1035

| | |
|---|---|
| THOMAS R. AMES, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 C 9213 |
| MORGAN HUDSON and JOEL SHAW, *Defendants-Appellees.* | Rubén Castillo, *Judge*. |

**O R D E R**

Thomas Ames, an inmate, was abruptly discharged from his job in the kitchen at Stateville Correctional Center in Crest Hill, Illinois, after he filed a grievance against a corrections officer. Ames brought a First Amendment action against that officer (and another officer), asserting that they dismissed him in retaliation for his grievance. The district court granted summary judgment for the defendants, concluding that Ames had

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

not produced any evidence that would allow a jury to return a judgment in his favor. We affirm.

Ames was interviewed in September 2015 by corrections officer Joel Shaw for an investigation into excess food trays found in housing units around the facility. Later that day, Ames, who had worked for years in the kitchen without incident, filed a grievance complaining that Shaw tried to extract information from him through "threatening and coercive tactics." Ames maintains that Shaw persisted in such conduct, even after he denied having any information and made clear that his job in the kitchen did not involve preparing food trays. He placed this grievance between the bars of his cell, and it was picked up by an unidentified guard.

Ames's correctional counselor, Morgan Hudson, was responsible for initially reviewing and responding to Ames's grievance. Hudson testified that he had a practice of dating the grievances he received and recording the responses that he sent. It is uncontested that Hudson never marked Ames's grievance as having been received, and that no response to the grievance was recorded. Accordingly, Hudson testified that he did not receive Ames's grievance.

A week later Shaw emailed another officer, directing her to remove Ames and five other inmates from their positions in Stateville's kitchen. The next day, Ames received a letter stating that he was being removed from his kitchen job "based on staff recommendation, and security or administrative reasons."

On the day of his discharge, Ames filed a second grievance, this time accusing Shaw of terminating his kitchen assignment in retaliation for the prior grievance. Hudson received Ames's second grievance and denied it, replying that job assignments are a privilege.

Ames then sued Shaw and Hudson under 42 U.S.C. § 1983 for removing him from his kitchen assignment in retaliation for his first grievance. (Ames also sued other prison employees, but they were dismissed because he failed to allege that they had participated in his discharge. He does not challenge that dismissal on appeal.)

The district court ultimately granted Shaw and Hudson's motion for summary judgment. The court concluded that Ames could not establish a prima facie case for First Amendment retaliation against Shaw because he presented no evidence that Shaw

knew about—let alone was motivated by—the first grievance. Regarding Hudson, the court determined that Ames failed to present any evidence that Hudson was even involved in his discharge. The court then rejected a new argument raised by Ames for the first time in his summary judgment response: Hudson was liable because he turned a blind eye to Shaw's retaliatory conduct by failing to investigate and respond adequately to Ames's grievances, not because he participated personally in Ames's termination. It was too late, the court concluded, for Ames to amend his theory of the case.

On appeal, Ames primarily challenges the district court's conclusion that he did not present evidence sufficient to show that Shaw retaliated against him for filing his first grievance. But to show that a plaintiff's protected activity motivated a defendant's decision to retaliate, the plaintiff first must "produce evidence that the defendant knew about the protected speech." *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017). Ames invokes a post-discharge conversation he allegedly had with Hudson in which Hudson told him that he had spoken with Shaw about the grievance. But Ames conceded in the district court—in his response to defendants' statement of undisputed facts—that Hudson never spoke with Shaw about the first grievance, and he is "bound to his admission." *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019). Regardless, the evidence shows that Hudson never received Ames's first grievance and did not even become aware of that grievance until he reviewed Ames's second grievance complaining of retaliation. Ames speculates that Hudson received the first grievance and simply refused to date it or respond to it, but speculation is not enough to create a genuine fact question for the purpose of summary judgment. *See Consolino*, 872 F.3d at 830.

Next, Ames generally challenges the district court's decision to grant summary judgment on his retaliation claim against Hudson. But we decline to consider this claim because Ames explicitly abandoned it in his summary judgment response; in that response, he clarified that he sought to hold Hudson liable not for committing any retaliatory act, but for failing to investigate and respond to his grievances. When a litigant intentionally chooses to pursue one argument over another, he waives his right to make the abandoned argument on appeal. *See Hamer v. Neighborhood Hous. Servs. of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018); *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002).

Finally, Ames asserts for the first time that he proffered evidence from which a jury could find that Hudson and Shaw conspired to retaliate against him. But Ames forfeited this claim by failing to present it in the district court. *See Milligan v. Bd. of Trs. of Southern Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012). Though his initial complaint did allege a conspiracy claim, that complaint was superseded by his second amended complaint ("the governing document in this case," *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)), which alleged only retaliation, and Ames did not otherwise press a conspiracy claim at summary judgment.

AFFIRMED